OPINION
{¶ 1} Appellant/Cross-Appellee Fairfield Medical Center ("FMC") appeals the verdict rendered in the Fairfield County Court of Common Pleas raising numerous issues for our review. Appellee/Cross-Appellants Stephanie and Michael McManaway ("appellees") cross-appeal challenging the trial court's denial of their motion for prejudgment interest. The following facts give rise to this appeal.
 {¶ 2} On March 9, 2001, Appellee Stephanie McManaway underwent an outpatient tubal ligation procedure performed by Dr. John Stevenson. At the beginning of the procedure, Dr. Stevenson used a weighted speculum to open the surgical field. The speculum had been heated, in an autoclave, to 270 degrees Fahrenheit and had been air cooled prior to its insertion into Appellee McManaway. The speculum remained in appellee's vagina for the entire procedure, which took approximately twenty to thirty minutes.
 {¶ 3} Upon removal of the speculum, the medical staff noticed burns to Appellee McManaway's vaginal cavity and surrounding area. The operative notes indicate that the cause of the burns was explained to appellees. The notes also indicate that Appellee McManaway described her pain as "10 out of 10." In order to control the pain, appellee received three doses of morphine sulfate and an injection of Toradol, a drug that enhances the effect of morphine. Upon discharge from the hospital, Appellee McManaway was provided Silvadene topical cream for the burns.
 {¶ 4} The next day, a public relations employee of FMC called Appellee McManaway to inquire whether she was satisfied with the services she received at FMC. Appellee McManaway told the employee about the burns she received and the employee professed no knowledge of the burns nor had any record of her injury. Due to this lack of concern and documentation, Appellee McManaway returned to FMC. Dr. Jill Nicholson, an employee of the emergency room, examined Appellee McManaway and confirmed burn wounds that were already blistering and weepy. Dr. Nicholson noted the burns were both external and internal.
 {¶ 5} Appellee McManaway also visited Hocking Emergency Room for a referral to another OB-GYN. However, Hocking could only refer appellee back to Dr. Stevenson. Thereafter, Appellee McManaway contacted an attorney, in Columbus, who referred her to Dr. Stuart Jones. Appellee McManaway received no other treatment for the burns beyond the topical cream. Because the wounds were constantly rubbed by clothing, walking, or any movement, they took approximately four to six months to heal. When the wounds healed, they left scars which remain sensitive to touch.
 {¶ 6} On November 8, 2001, appellees filed their lawsuit in Franklin County. FMC filed a motion for change of venue which the Franklin County Court of Common Pleas granted on June 25, 2002. This matter eventually proceeded to trial on October 15, 2004. Following deliberations, the jury returned a verdict in favor of Appellee Stephanie McManaway in the amount of $60,000 and in favor of Appellee Michael McManaway in the amount of $5,000. Following the verdict, appellees filed a motion requesting prejudgment interest. The trial court denied appellees' motion on March 4, 2005.
 {¶ 7} FMC timely filed a notice of appeal and appellees filed a cross-appeal. The parties set forth the following assignments of error for our consideration:
 Direct Appeal {¶ 8} "I. THE TRIAL COURT ERRED AND ITS DECISION IS CONTRARY TO THE LAW OF THE STATE OF OHIO ESTABLISHED BY THE OHIO SUPREME COURT IN RAMAGE V. CENTRAL OHIO EMERGENCY SERVICES (10992), (SIC) 64 OHIO ST.3D 97; SHUMAKER V. OLIVER B. CANON SONS,INC., (1986) 28 OHIO ST.3D 367; BRUNI ET AL. V. TATSUMI ET AL.
(1976), 46 OHIO ST.2D 127; AND COOPER V. SISTERS OF CHARITY OFCINCINNATI, INC. ET AL., (1971), 27 OHIO ST.2D 242, BECAUSE THE TRIAL COURT ERRONEOUSLY AND ARBITRARILY EXCLUDED FROM EVIDENCE RELEVANT AND QUALIFIED EXPERT OPINION TESTIMONY OF JILL NICHOLSON, M.D. ("DR. NICHOLSON") AND STUART JONES, M.D. ("DR. JONES") WHICH WAS EXPRESSED TO A REASONABLE DEGREE OF MEDICAL CERTAINTY AND ERRONEOUSLY ADMITTED UNQUALIFIED SPECULATIVE EXPERT OPINION TESTIMONY OF MICHEAL (SIC) BAGGISH, M.D. ("DR. BAGGISH") WHICH BY THE ACTUAL WORDS USED BY THE WITNESS WAS NOT EXPRESSED TO A REASONABLE DEGREE OF MEDICAL CERTAINTY. TR. 495-496, 519, 874-875, 924-925; EXCLUDED TESTIMONY OF DR. NICHOLSON ATTACHED AS EXHIBIT A; EXCLUDED TESTIMONY OF DR. JONES ATTACHED AS EXHIBIT B; AND EXCLUDED TESTIMONY OF DR. BAGGISH ATTACHED AS EXHIBIT C.
 {¶ 9} "II. THE TRIAL COURT ERRED AND ITS DECISION IS CONTRARY TO THE LAW OF THE STATE OF OHIO ESTABLISHED BY THE OHIO SUPREME COURT IN PHUNG V. WASTE MANAGEMENT, INC. (1994), 71 OHIO ST.3D 408, BECAUSE THE TRIAL COURT IMPROPERLY PERMITTED PLAINTIFFS TO SUBMIT DR. PRESTON'S VIDEOTAPED EVIDENTIARY DEPOSITION FOR USE AS REBUTTAL TESTIMONY DESPITE THE FACT THAT TESTIMONY WAS AVAILABLE FOR USE IN PLAINTIFF'S CASE-IN-CHIEF AND HAD IN FACT PREVIOUSLY BEEN FILED BY PLAINTIFF FOR USE IN PLAINTIFF'S CASE-IN-CHIEF. TR. 1051-1075; 1130-133.
 {¶ 10} "III. THE TRIAL COURT ERRED AND ITS DECISION IS CONTRARY TO THE LAW OF THE STATE OF OHIO AND OHIO RULE OF CIVIL PROCEDURE 26 BECAUSE THE COURT FAILED TO SUSTAIN DEFENDANT'S TWO MOTIONS TO COMPEL DISCLOSURE OF PLAINTIFF'S CURRENT MEDICAL RECORDS FOR THE PAST EIGHTEEN MONTHS BEFORE TRIAL IN A CASE IN WHICH THE PLAINTIFF'S CURRENT MEDICAL CONDITION WAS THE PRIMARY ISSUE OF THE CASE CONCERNING WHETHER HER CURRENT SYMPTOMS OF NUMBNESS AND INABILITY TO PERFORM AEROBICS WERE CAUSED BY HER MULTIPLE SCLEROSIS ("MS") OR BY A SUPERFICIAL BURN DURING SURGERY ON MARCH 9, 2001 MORE THAN THREE YEARS PRIOR. SEE: DEFENDANT'S SEPTEMBER 21, 2004 MOTION TO COMPEL; THE COURT'S OCTOBER 5, 2004 ORDER ATTACHED AS EXHIBIT D; DEFENDANT FAIRFIELD MEDICAL CENTER'S MOTION FOR RECONSIDERATION OF OCTOBER 5, 2004 ORDER, REQUEST FOR ORDER IN LIMINE TO PROHIBIT DISCUSSION OR CLAIM FOR DAMAGES FOR ANY OF PLAINTIFF'S CURRENT HEALTH CONDITIONS AND IN THE ALTERNATIVE MOTION FOR CONTINUANCE; OCTOBER 8, 2004 ENTRY OVERRULING DEFENDANT'S MOTION FOR CONTINUANCE; AND, ATTACHED AS EXHIBIT D, OCTOBER 12, 2004 MOTION TO COMPEL OR IF IN THE ALTERNATIVE MOTION IN LIMINE.
 {¶ 11} "IV. THE TRIAL COURT ERRED AND ITS DECISION IS CONTRARY TO THE LAW OF THE STATE OF OHIO ESTABLISHED BY RAMAGE,SUPRA, SHUMAKER, SUPRA, BRUNI, SUPRA AND COOPER,SUPRA, BECAUSE THE TRIAL COURT ERRONEOUSLY OVERRULED DEFENDANT'S MOTION FOR DIRECTED VERDICT AND ALLOWED SUBMISSION TO THE JURY OF A CLAIM FOR DAMAGES FOR DEFENDANT'S ALLEGED NONREFERRAL OF THE PATIENT TO A PLASTIC SURGEON DESPITE THE ABSENCE OF QUALIFIED EXPERT TESTIMONY ESTABLISHING PROXIMATE CAUSE THAT SUCH A REFERRAL WOULD IN PROBABILITY HAVE RESULTED IN A DIFFERENT TREATMENT OR OUTCOME. TR. 503, 1097-1098, 1123-1126.
 {¶ 12} "V. THE TRIAL COURT ERRED AND ITS DECISION IS CONTRARY TO LAW OF THE STATE OF OHIO BECAUSE THE TRIAL COURT ERRONEOUSLY AND ARBITRARILY EXCLUDED RELEVANT AND PROBATIVE EVIDENCE OF THE BEXLEY POLICE DEPARTMENT RECORDS, REPRIMANDS AND GRIEVANCES INVOLVING PLAINTIFF'S EMOTIONAL DISTRESS ISSUES WHICH SHE NOW ALLEGES WERE CAUSED BY DEFENDANT AND PLAINTIFF'S PRIOR MULTI YEAR CONTENTIOUS WRONGFUL DISCHARGE, EEOC AND UNION GRIEVANCE LITIGATION WITH THE BEXLEY POLICE DEPARTMENT. TR. 1136-1138, 1153 AND 1270.
 {¶ 13} "VI. THE TRIAL COURT ERRED IN RANDOMLY REDUCING THE AWARD OF ATTORNEYS' FEES AND EXPENSES TO DEFENDANT REGARDING DEFENDANT'S SUCCESSFUL MOTION TO TRANSFER VENUE PURSUANT TO OHIO R. CIV. P. 3(C)(2) WITHOUT ANY EVIDENTIARY, RATIONAL OR LEGAL BASIS FOR THAT ARBITRARY REDUCTION. SEE: JUNE 12, 2003 COURT ORDER, ATTACHED AS EXHIBIT E; NOVEMBER 10, 2004 FAIRFIELD MEDICAL CENTER'S NOTICE OF FILING AFFIDAVIT ATTACHED AS EXHIBIT F; AND MARCH 4, 2005 ORDER ARBITRARILY REDUCING AWARD WITHOUT ANY EVIDENTIARY BASIS ATTACHED AS EXHIBIT G.
 {¶ 14} "VII. THE TRIAL COURT ERRED BY EXCLUDING EVIDENCE RELEVANT TO EXPERT WITNESS CREDIBILITY OR BIAS SPECIFICALLY REGARDING THE FACT THAT STUART JONES, M.D. ("DR. JONES") ORIGINALLY EXAMINED THE PLAINTIFF BECAUSE PLAINTIFF'S COUNSEL PROVIDED HIS NAME TO THE PLAINTIFF AND DR. JONES WAS ORIGINALLY IDENTIFIED AS AN EXPERT FOR THE PLAINTIFF BUT WAS LATER WITHDRAWN AS AN EXPERT WITNESS BY THE PLAINTIFFS ON JULY 13, 2004 AFTER THE OPINIONS DR. JONES EXPRESSED IN HIS DISCOVERY DEPOSITION. TR. 127-133; 930-931 AND EXCLUDED PORTIONS OF DR. JONES (SIC) TESTIMONY ATTACHED AS EXHIBIT B.
 {¶ 15} "VIII. THE TRIAL COURT ERRED BY ALLOWING PLAINTIFF'S COUNSEL TO MISLEAD THE JURY REGARDING THE PURPOSE OF A DISCOVERY AND EVIDENTIARY DEPOSITION AND ERRED BY INCONSISTENTLY EXCLUDING TESTIMONY ELICITED BY DEFENDANT'S COUNSEL FROM DR. BAGGISH AND DR. JONES TO CORRECT THE MISIMPRESSION CREATED BY PLAINTIFF'S COUNSEL AND TO CORRECTLY EXPLAIN TO THE JURORS WHY DR. JONES AND DR. BAGGISH WERE DEPOSED TWICE. TR. 540, 978-979; 1234-1235 AND IMPROPERLY EXCLUDED ANSWERS OF DR. JONES (SAME EXHIBIT AS ABOVE) AND IMPROPERLY EXCLUDED PORTIONS OF DR. BAGGISH (SIC) TESTIMONY ATTACHED AS EXHIBIT C.
 {¶ 16} "IX. THE TRIAL COURT ERRED BY ALLOWING IMPROPER, PREJUDICIAL AND UNTRUE CLOSING ARGUMENT BY PLAINTIFF'S COUNSEL ALLEGING DEFENDANT'S COUNSEL DROVE A JAGUAR TO AN EXPENSIVE $850,000 HOUSE WITH A $300,000 PICASSO AND REFERENCE TO AN `INSURANCE COMPANY' AND HOSPITAL EXECUTIVES DANCING IN THE STREETS AND THAT DEFENDANT'S EXPERT WAS MAKING MORE MONEY ON THE CASE THAN THE PEOPLE WHO GOT HURT. TR. 1185, 1233-1234.
 {¶ 17} "X. THE TRIAL COURT ERRED BY OVERRULING DEFENDANT'S MOTION FOR DIRECTED VERDICT PURSUANT TO OHIO R. CIV. P. 50 AFTER OPENING STATEMENTS REGARDING PLAINTIFF'S LOSS OF CONSORTIUM CLAIM WHICH CLAIM WAS NOT MENTIONED BY PLAINTIFF'S COUNSEL IN OPENING STATEMENT (TR. 176-177) AND IN OVERRULING DEFENDANT'S MOTION FOR DIRECTED VERDICT BASED ON PLAINTIFF'S FAILURE TO PRESENT QUALIFIED EXPERT TESTIMONY EVIDENCE OF PROXIMATE CAUSE IN PLAINTIFF'S CASE-IN-CHIEF. TR. 146-176, 1123-1125."
 Cross-Appeal {¶ 18} "I. THE TRIAL COURT ERRED BY DENYING PREJUDGMENT INTEREST WITHOUT ALLOWING DISCOVERY OR RULING ON THE MOTION TO COMPEL DISCOVERY.
 {¶ 19} "II. THE TRIAL COURT ERRED BY DENYING PREJUDGMENT INTEREST WITHOUT A HEARING TO DETERMINE THE FACTUAL DISPUTES.
 {¶ 20} "III. THE TRIAL COURT ERRED BY NOT GRANTING PREJUDGMENT INTEREST ON THE RECORD BEFORE IT."
 I {¶ 21} In its First Assignment of Error, FMC maintains the trial court erred when it excluded portions of testimony from Drs. Nicholson, Jones and Baggish. We disagree.
 {¶ 22} Decisions regarding the admissibility of evidence are within the broad discretion of the trial court. Beard v. MeridiaHuron Hosp., 106 Ohio St.3d 237, 2005-Ohio-4787, at ¶ 20, citingState v. Hymore (1967), 9 Ohio St.2d 122, 128. A decision to admit or exclude evidence will be upheld absent an abuse of discretion. Beard at ¶ 20, citing O'Brien v. Angley (1980),63 Ohio St.2d 159, 164-165. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. "Even in the event of an abuse of discretion, a judgment will not be disturbed unless the abuse affected the substantial rights of the adverse party or is inconsistent with substantial justice." O'Brien at 164-165, citing Beard at ¶ 20. It is based upon this standard that we review FMC's First Assignment of Error.
 {¶ 23} FMC first challenges the exclusion of Dr. Nicholson's testimony. Dr. Nicholson treated appellee in the emergency room, at FMC, on March 10, 2001. Dr. Nicholson frequently treats burns as an emergency room physician. Tr. Vol. III at 8638-64. The trial court excluded the following testimony of Dr. Nicholson:
 {¶ 24} "Q. And Doctor, based on your education, training, experience and to a reasonable degree of medical certainty, do you have an opinion whether or not this patient, if she currently complains on an inability to play tennis, to do aerobics, exercise or changes in sensation, do you have an opinion to a reasonable degree of medical certainty whether those complaints are causally related, more likely than not, to the burn that you visualized as second degree on March 10, 2001?
 {¶ 25} "A. I strongly feel that her ability to participate in athletic or any other activities of daily living are not a result of the second degree burns that I investigated on 3-10-01, but much, much more likely due to her unfortunate experience with multiple sclerosis.
 {¶ 26} "Q. And does that also apply — Does your opinion also apply to changes in sensitivity three years later?
 {¶ 27} "A. I agree, yes. That's correct."
 " * * * {¶ 28} "Q. How does multiple sclerosis, or MS, affect changes in sensation or sensitivity or your ability to exercise or do aerobics or play tennis?
 {¶ 29} "A. I'm not a neurologist and I'm not an expert in MS, but according to my knowledge and understanding and my experience with people who have MS this can affect patients in a myriad of ways, most of them neurological or dealing with sensation.
 {¶ 30} "It varies from patient to patient. There's no one way it affects people, but it can affect sensation, muscle tone, strength, balance, et cetera, et cetera, and so on.
 " * * * {¶ 31} "A. I do not directly treat MS patients, but I do see patients from time to time who have MS or who are currently under investigation or a diagnosis pertaining to a possible diagnosis of MS.
 {¶ 32} "Q. Did you study about MS during your neurology —
 {¶ 33} "A. I did.
 {¶ 34} "Q. — courses?
 {¶ 35} "A. I did.
 {¶ 36} "Q. In medical school?
 {¶ 37} "A. In medical school and residency.
 {¶ 38} "Q. Based on that education, training, experience and your personal dealings with MS, in your experience, to a reasonable degree of medical of medical degree, do MS patients have changes in sensitivity, in sensation and ability to control their muscles and exercise?
 {¶ 39} "A. Absolutely. And these can wax and wane, become more severe and less severe over a period of time. It can go away for months or years at a time and then reappear.
 {¶ 40} "Q. If you rub a Q-tip up and down a patient such as Ms. McManaway who has MS, is it likely to elicit changes in sensitivity?
 " * * * {¶ 41} "A. I can't directly comment about that. I do not think that the nature of her second degree burns on this date, 3-10-01, would be likely to account for changes in sensation further down on the lower extremities." Depo. Dr. Jill Nicholson, at 14-19.
 {¶ 42} In 2000, appellee was diagnosed with Multiple Sclerosis. At trial, evidence was introduced that symptoms of MS include impaired gait (walking problems), headache, numbness, seizures, sexual dysfunction, spasticity, tremors, vision problems, pain, emotional problems, fatigue, bladder problems, and cognitive problems. The testimony excluded by the trial court concerned Dr. Nicholson's comments regarding appellee's diagnosis of MS.
 {¶ 43} The trial court did not abuse its discretion when it excluded this testimony. Dr. Nicholson only treated appellee one time, for approximately fifteen minutes. Dr. Nicholson did not know how the healing of the wounds progressed. However, most importantly, Dr. Nicholson admitted she had not recently treated appellee and she was not a neurologist or an expert on MS. Therefore, she did not have the knowledge, background, experience or education to answer questions about appellee's current complaints and whether MS was or was not the cause of discomfort in the area of the scarring.
 {¶ 44} FMC next challenges the exclusion of Dr Jones' testimony. The trial court excluded the following testimony of Dr. Jones.
 {¶ 45} "Q. * * * Doctor, have you treated MS patients?
 {¶ 46} "A. I have had several patients in my practice that have had MS.
 {¶ 47} "Q. With an MS patient, do you anticipate in probability that they will have more or less sensation below the waist?
 " * * * {¶ 48} "A. The several MS patients that I have had, when I did do — the one, when I would do a Pap smear or pelvic exam, she seemed to have decreased sensation. I have also had an MS patient who, it turned out, we feel — with chronic pelvic pain that I have treated and was — and I did some research on it, did show some possibility of MS with chronic pelvic pain. And that has occurred in the last year or so.
 {¶ 49} "But again, I would expect in the — that with the Pap smears I have done, that there was a decreased sensation at that time. Not — but I have also, like I say, have had patients where they have described abdominal pain as a cause of MS as well — from MS as well.
 " * * * {¶ 50} "Q. Doctor, I will hand you what has been previously marked as Exhibit D.
 {¶ 51} "Have you seen it before today?
 {¶ 52} "A. This is the — yes, because I — it came with the — yes, I did see this. It came with the notes.
 {¶ 53} "Q. It came from our office?
 {¶ 54} "A. Yes, correct. It was the letterhead when you sent me records.
 {¶ 55} "Q. And is this a notice of withdrawal of witness where the plaintiffs had withdrawn you as a witness in this case?
 " * * * {¶ 56} "A. Let me read here.
 {¶ 57} "Notice to withdraw. Plaintiffs hereby withdraw Stuart R. Jones as a witness in this case since he was not actually involved in the treatment of plaintiff's burns.
 {¶ 58} "So I guess — I don't know the legalese, but that is what I see there.
 {¶ 59} "Q. Doctor, after you provided your letter to the plaintiff's attorneys at Isaac, Brant stating that you thought these were superficial burns and after you gave your deposition which you testified, much as you have today, did the plaintiffs withdraw you as a witness?
 " * * * {¶ 60} "A. This is the first time — I didn't see — maybe I did see that and read the bottom letter. But again, I don't know what — the legalese on that. I just read that line right there, which says notice of withdrawal of witness.
 " * * * {¶ 61} "Q. So the jury understands, this is the second time that Mr. Lovering has come to your office to question you about this patient, correct?
 {¶ 62} "A. Correct.
 {¶ 63} "Q. And the first time was in April of 2003, I think a little over a year ago?
 " * * * {¶ 64} "A. If that was the time of the last * * *." Depo. Dr. Stuart Jones at 172-6.
 {¶ 65} We do not find the trial court abused its discretion when it excluded the above portions of Dr. Jones' testimony. FMC argues Dr. Jones' testimony on the issue of appellee's injuries would have assisted the trier of fact. We disagree with this conclusion because the excluded testimony pertained to two patients, with MS, that Dr. Jones treated. The testimony did not concern appellee or the injuries she suffered. Further, the testimony did not assist the trier of fact in determining damages in this matter.
 {¶ 66} We also find the trial court properly excluded Dr. Jones' testimony about why he was withdrawn as a witness for the appellees. It appears from Dr. Jones' comments, that he was not clear why he was withdrawn as a witness. However, the "Notice of Withdrawal of Witnesses" provides that Dr. Jones was withdrawn as a witness because he did not treat appellee and "* * * so it is clear that Defendant Fairfield Medical Center, which has noticed each witness for deposition, is calling each as on direct." See Notice of Withdrawal of Witnesses, July 27, 2004, at 1. Again, the reasons why appellees withdrew Dr. Jones as a witness is irrelevant for the jury to consider in determining damages in this matter.
 {¶ 67} Finally, FMC challenges the admission of the testimony of Dr. Michael Baggish. FMC argues Dr. Baggish's testimony should have been excluded because he issued his opinion, in a letter dated October 12, 2001, before he had an opportunity to examine appellee. Second, FMC argues Dr. Baggish's opinion was not based on a reasonable degree of medical certainty because he used such terms as "not uncommon" or "I've seen this on occasion." FMC argues the use of such language did not establish Dr. Baggish's testimony to a reasonable degree of medical certainty.
 {¶ 68} FMC claims that at the conclusion of Dr. Baggish's testimony, counsel for appellees asked Dr. Baggish whether all his opinions had been given to a reasonable degree of medical certainty. In support of this argument, FMC cites Vol. II, page 495 of the trial transcript. FMC argues that a general question, at the end of a deposition, asking whether all opinions were given to a reasonable degree of medical certainty cannot transform inadmissible speculative testimony into admissible evidence.
 {¶ 69} FMC is correct in arguing that "[i]n order to establish medical malpractice, it must be shown by a preponderance of evidence that the injury complained of was caused by the doing of some particular thing or things that a physician or surgeon of ordinary skill, care and diligence would not have done under like or similar conditions or circumstances, or by the failure or omission to do some particular thing or things that such a physician or surgeon would have done under like or similar conditions and circumstances, and that the injury complained of was the direct and proximate result of such doing or failing to do some one or more of such particular things."Bruni v. Tatsumi (1976), 46 Ohio St.2d 127, paragraph one of the syllabus.
 {¶ 70} However, FMC is incorrect when it argues plaintiffs' counsel attempted to establish, at the end of the deposition, that Dr. Baggish's testimony was given to a reasonable degree of medical certainty. A review of Dr. Baggish's testimony establishes that he did not testify to a reasonable degree of medical certainty only at the conclusion of his deposition. Rather, Dr. Baggish testified, in such a manner, throughout his deposition and stated, as follows, to a reasonable degree of medical certainty: (1) the extent of appellee's injuries she sustained as a result of the burns, Tr. Vol. II at 483-484; (2) future problems appellee would likely experience as a result of the burns, Tr. Vol. II at 495-496; (3) that a relationship exists between the itching and burns, Tr. Vol. II at 498; (4) the burns are significant, deep burns and not minor, superficial second-degree burns, Tr. Vol. II at 501; and (5) appellee's discomfort is not caused by her MS, but instead by scarring as a result of the burns she received. Tr. Vol. II at 562.
 {¶ 71} Based upon the above, we conclude the trial court did not abuse its discretion when it excluded portions of testimony presented by Drs. Nicholson and Jones. Further, the trial court did not abuse its discretion when it admitted certain portions of Dr. Baggish's testimony, which were based upon a reasonable degree of medical certainty.
 {¶ 72} FMC's First Assignment of Error is overruled.
 II {¶ 73} In its Second Assignment of Error, FMC contends it was error for the trial court to allow Dr. Mark Preston's deposition to be presented, as rebuttal testimony, because the testimony had originally been filed for use in appellees' case-in-chief and his testimony did not satisfy the mandates of Phung v. Waste Mgmt.,Inc., 71 Ohio St.3d 408, 1994-Ohio-389. We disagree.
 {¶ 74} As in the First Assignment of Error, the abuse of discretion standard of review applies. In Phung, the Ohio Supreme Court explained that "[a] party has an unconditional right to present rebuttal testimony on matters which are first addressed in an opponent's case-in-chief and should not be brought in the rebutting party's case-in-chief." Id. at 410. "Matters which the plaintiff bears the burden of proving are properly presented in plaintiff's case-in-chief." Id.
 {¶ 75} In the case sub judice, FMC argues Dr. Preston's deposition should not have been presented, during rebuttal, because appellees originally indicated they would use it in their case-in-chief. FMC also argues Dr. Preston's deposition testimony was not admissible, in rebuttal, because his testimony concerned proximate cause and whether appellee should have been referred to a plastic surgeon. FMC claims these issues were not first addressed in its case-in-chief.
 {¶ 76} Upon review of the testimony presented in FMC's case-in-chief, we find the trial court did not abuse its discretion and properly permitted appellees to present the deposition testimony of Dr. Preston. FMC called Dr. Steven DeVoe, its retained expert, to testify in its case-in-chief. Dr. DeVoe testified that appellee's scars were small; that the scars were not a source of discomfort; that the burns would have only been painful for several weeks; that the scars would eventually go away; and that appellee should have no long-term problems from the burns or scars. Tr. Vol. II at 7197-20, 742, 760. Dr. DeVoe further testified that he read Dr. Preston's deposition and explained to the jury the portions of Dr. Preston's deposition with which he disagreed. Id. at 753-755, 772-785.
 {¶ 77} We agree with appellees' argument that once FMC presented Dr. DeVoe's testimony regarding Dr. Preston's opinions, it was proper for the jury to view Dr. Preston's deposition testimony in rebuttal, especially since it had not been offered into evidence prior to Dr. DeVoe's testimony. Further, Dr. Preston's testimony clearly rebutted the testimony presented by Dr. DeVoe. Dr. Preston testified that appellee's burns were sensitive and painful five months after surgery. Id. at 1083-1084. Dr. Preston also refuted the size of the scars claimed by Dr. DeVoe and confirmed that eight months after the burns, when he saw appellee she still had sensitivity to the scars. Id. at 1085, 1086-1087. Finally, Dr. Preston rejected Dr. DeVoe's opinion that the discomfort from the scars was MS-related and instead testified that most patients with scars have sensitivity and tenderness with motion or rubbing. Id. at 1087.
 {¶ 78} The Phung case did not require appellees to anticipate Dr. DeVoe's live trial testimony presented during FMC's case-in-chief. Rather, Dr. Preston's deposition testimony addressed matters first raised in FMC's case-in-chief. As such, the trial court did not abuse its discretion when it permitted appellee's to present Dr. Preston's deposition testimony during rebuttal.
 {¶ 79} FMC's Second Assignment of Error is overruled.
 III {¶ 80} FMC maintains, in its Third Assignment of Error, the trial court erred when it denied its request for an order compelling production of all hospital and physician records, including those records for the eighteen months prior to trial. FMC argues the denial of this information hindered its ability to defend on the issues of proximate cause and appellee's current medical condition. We disagree.
 {¶ 81} The Rules of Civil Procedure allow for liberal discovery. According to Civ.R. 26(B)(1), the scope of discovery includes "* * * any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party * * *." Despite this wide scope of permissible discovery, trial courts are given broad discretion in the management of discovery. State ex rel. Daggettv. Gessaman (1973), 34 Ohio St.2d 55, 57. Thus, an appellate court reviews discovery issues pursuant an abuse of discretion standard. Geggie v. Cooper Tire Rubber Co., Hancock App. No. 5-05-01, 2005-Ohio-4750, at ¶ 25.
 {¶ 82} FMC sought to discover appellee's medical records for eighteen months prior to trial because they would allegedly reveal her doctors' diagnosis of her current medical condition and the cause of her current medical condition for which she sought damages. FMC further sought to establish, through the use of these records, that appellee's current medical condition was due to her MS as opposed to the burns she received. Appellee refused to provide an authorization for FMC to obtain these records. Therefore, FMC filed a motion to compel and motion for continuance on September 21, 2004.
 {¶ 83} In a judgment entry dated October 5, 2004, the trial court denied FMC's motion to compel finding FMC had been provided all of the relevant and necessary records due to the recent depositions of Drs. Aebi, Parker, Jones and Baggish. The trial court further noted that appellee had not seen any physician since the date of the depositions. Appellees respond that if FMC did not believe the records were complete, it could have issued subpoenas for those records it believed were missing. Appellees point out that by filing the lawsuit, appellee waived any physician/patient privilege under R.C. 2317.02(B)(1)(a)(iii), which provides as follows:
 {¶ 84} "(B)(1) * * * The testimonial privilege established under this division does not apply, and a physician or dentist may testify or may be compelled to testify, in any of the following circumstances:
 {¶ 85} "(a) In any civil action, in accordance with the discovery provisions of the Rules of Civil Procedure in connection with a civil action, or in connection with a claim under Chapter 4123. of the Revised Code, under any of the following circumstances:
 " * * * {¶ 86} "(iii) If a medical claim, * * * as defined in section2305.11 of the Revised Code, an action for wrongful death, any other type of civil action, or a claim under Chapter 4123. of the Revised Code is filed by the patient, the personal representative of the estate of the patient if deceased, or the patient's guardian or other legal representative."
 {¶ 87} Thus, although R.C. 2317.(B)(1)(a)(iii) applies, appellee's medical records are not automatically discoverable. R.C. 2317.02(B)(3)(a) limits the communications which may be discovered. It provides:
 {¶ 88} "(B)(3)(a) If the testimonial privilege described in division (B)(1) of this section does not apply as provided in division (B)(1)(a)(iii) of this section, a physician or dentist may be compelled to testify or to submit to discovery under the Rules of Civil Procedure only as to a communication made to the physician or dentist by the patient in question in that relation, or the physician's or dentist's advice to the patient in question, that related causally or historically to physical or mental injuries that are relevant to issues in the medical claim, * * *."
 {¶ 89} Thus, under R.C. 2317.02(B), FMC could have discovered appellee's communications to her doctors, including medical records, but only those that relate causally or historically to her claimed injuries. The trial court concluded that FMC had all the pertinent medical records. If FMC believed it did not have all the necessary and pertinent records, it could have attempted to subpoena the documents to which it believed it was entitled. The record indicates FMC made no effort to do so. We do not find the trial court abused its discretion when it denied FMC's motion to compel.
 {¶ 90} FMC's Third Assignment of Error is overruled.
 IV {¶ 91} In its Fourth Assignment of Error, FMC contends the trial court erred when it denied its motion for directed verdict. FMC argues the trial court erroneously permitted the jury to award damages for a theory of liability that the patient should have been referred to a plastic surgeon, by the hospital, despite the absence of any expert testimony establishing proximate cause or damages attributable to the alleged failure to refer appellee to a plastic surgeon. We disagree.
 {¶ 92} Civ.R. 50(A)(4) addresses motions for directed verdict when granted on the evidence. This rule provides as follows:
 {¶ 93} "When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."
 {¶ 94} The "reasonable minds" test calls upon a court to determine only whether there exists any evidence of substantial probative value in support of the claims of the non-moving party.Williams v. Brown, Muskingum App. Nos. CT2004-0048, CT20040-051, 2005-Ohio-5301, at ¶ 28, citing Wagner v. RocheLaboratories, 77 Ohio St.3d 116, 119-120, 1996-Ohio-85. Further, in Ruta v. Breckenridge-Remy Co. (1982), 69 Ohio St.2d 66, the Ohio Supreme Court discussed the analysis a trial court is to follow when ruling on a motion for a directed verdict. The Court explained:
 {¶ 95} "When a motion for a directed verdict is entered, what is being tested is a question of law; that is, the legal sufficiency of the evidence to take the case to the jury. This does not involve weighing the evidence or trying the credibility of the witnesses; it is in the nature of a demurrer to the evidence and assumes the truth of the evidence supporting the facts essential to the claim of the party against whom the motion is directed, and gives to that party the benefit of all reasonable inferences from that evidence. The evidence is granted its most favorable interpretation and is considered as establishing every material fact it tends to prove. The `reasonable minds' test of Civ.R. 59(A)(4) calls upon the court only to determine whether there exists any evidence of substantial probative value in support of the party's claims. SeeHamden Lodge v. Ohio Fuel Gas Co. (1934), 127 Ohio St. 469. Weighing evidence connotes finding facts from the evidence submitted; no such role is undertaken by the court in considering a motion for a directed verdict. A motion for a directed verdict raises a question of law because it examines the materiality to be drawn from the evidence. To hold that in considering a motion for directed verdict a court may weigh the evidence, would be to hold that a judge may usurp the function of the jury. Section 5, Article I of the Ohio Constitution." Id. at 68-69.
 {¶ 96} Our standard of review of a trial court's disposition of a motion for directed verdict is de novo. Williams v. Brown,
supra, at ¶ 28. "De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial." Brewer v. Cleveland CitySchools Bd. of Edn. (1997), 122 Ohio App.3d 378, 383, citingDupler v. Mansfield Journal Co., Inc. (1980),64 Ohio St.2d 116, 119-120. Thus, the trial court's decision is not granted any deference by the reviewing appellate court. Brown v. Scioto Cty.Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711. It is based upon this standard that we review FMC's Fourth Assignment of Error.
 {¶ 97} In support of its motion for directed verdict, FMC essentially argues the trial court erred when it permitted the jury to award damages for a theory of liability for which no expert testimony was presented. We have reviewed the record in this matter and find that Dr. Baggish testified that appellee should have been referred to a burn specialist or plastic surgeon. The pertinent part of Dr. Baggish's testimony is as follows:
 {¶ 98} "Q. So what, if anything, should the hospital have done for Stephanie when they discovered these burns?
 {¶ 99} "A. Well, the hospital was responsible for this injury because of their negligence, and so they should have provided her with suitable care. They should have got her somebody to take care of these burns.
 " * * * {¶ 100} "Q. And what specialty should they have sent her to?
 {¶ 101} "A. They should have got a plastic surgeon or a burn surgeon." Tr. Vol. II at 502-503.
 {¶ 102} Because we find Dr. Baggish presented expert testimony that FMC should have provided appellee with a plastic surgeon or a burn surgeon, we find the trial court properly denied FMC's motion for a directed verdict. Thus, the trial court properly permitted the jury to award damages on this theory of liability.
 {¶ 103} FMC's Fourth Assignment of Error is overruled.
 V {¶ 104} FMC maintains, in its Fifth Assignment of Error, the trial court improperly excluded evidence of appellee's prior emotional problems with her former employer, the Bexley Police Department, and of her EEOC claim, union grievance and multi-year litigation regarding her discharge by the police department. We disagree.
 {¶ 105} FMC argues the evidence concerning appellee's employment history with the Bexley Police Department was relevant and probative to the issue of whether appellee's emotional distress predated the burns she received on March 9, 2001. Appellees filed a motion in limine to exclude this evidence on the basis that the information is irrelevant and immaterial because appellee was not claiming loss of income in this case. The trial court granted appellees' motion in limine as it pertained to the gender discrimination matter finding that although it may be relevant, it was too confusing to present to the jury. Tr. Vol. III at 697, 699.
 {¶ 106} It is within the trial court's determination whether to admit or exclude evidence when ruling on a motion in limine.Algood v. Smith (Apr. 20, 2000), Cuyahoga App. Nos. 76121, 76122, at 5. Therefore, we will not reverse the trial court's determination absent an abuse of discretion. Id. Evid.R. 403(A) specifically mandates that evidence be excluded when its probative value is outweighed by its tendency to confuse the issues or mislead the jury.
 {¶ 107} We do not find the trial court abused its discretion when it excluded evidence regarding appellee's alleged emotional problems, EEOC claim, union grievance and multi-year litigation with the Bexley Police Department. The issues raised by FMC's proffered evidence are totally unrelated to the burns she received in 2001 and would not have assisted the jury in determining damages in this matter.
 {¶ 108} FMC's Fifth Assignment of Error is overruled.
 VI {¶ 109} In its Sixth Assignment of Error, FMC contends the trial court erred when it reduced the award of attorney fees, for its successful motion for change of venue, from $12,650 to $1,000. We disagree.
 {¶ 110} Civ.R. 3(C)(2) provides that "[w]hen an action is transferred to a county which is proper, the court may assess costs, including reasonable attorney fees * * *." In AtwoodResources, Inc. v. Lehigh (1994), 98 Ohio App.3d 293, we noted that the Ohio Supreme Court set forth five factors to be considered, by a trial court, when awarding attorney fees. These factors are as follows:
 {¶ 111} "1. The time and labor involved in maintaining the litigation,
 {¶ 112} "2. The novelty, complexity, and difficulty of the questions involved,
 {¶ 113} "3. The professional skill required to perform the necessary legal services,
 {¶ 114} "4. The experience, reputation, and ability of the attorneys and
 {¶ 115} "5. The miscellaneous expenses of the litigation. Id. at 299, citing Villella v. Waikem Motors, Inc. (1989),45 Ohio St.3d 36, 41.
 {¶ 116} "A trial court's decision as to the appropriate award of attorney fees will not be reversed absent an abuse of discretion." [Citation omitted.] Id. at 300.
 {¶ 117} In the case sub judice, FMC claims its fees of $12,650 were the result of approximately eight months of litigation regarding the venue issue. Counsel for FMC had to prepare for and attend hearings and conferences scheduled in the Franklin County Court of Common Pleas. In response, appellees explain that they originally filed their complaint, in Franklin County, believing the nurse who failed to cool the speculum lived in Franklin County. Appellees sought to file the suit, in Franklin County, to avoid having the embarrassing injury be public in her own community of Fairfield County. Appellees made numerous attempts to determine the residence of the nurse, however, FMC did not cooperate by providing this information. Ultimately, FMC did disclose the requested information and it was determined that the nurse lived on a street where the Franklin/Fairfield County line divided the street.
 {¶ 118} Upon review of the evidence submitted in support of FMC's request for attorney fees, we conclude the trial court did not abuse its discretion when it awarded FMC fees in the amount of $1,000, instead of the requested amount of $12,650. FMC claimed it spent a total of 66.75 hours addressing the venue issue. This is more than the total time counsel for FMC spent trying the case before the jury.
 {¶ 119} It appears that much of the delay and expense regarding the venue issue was the result FMC's counsel's failure to cooperate with appellees' request to disclose the name and address of the culpable nurse that failed to cool the speculum. Further, the fact that the street where the nurse resides is divided by the Franklin/Fairfield County line leads to the conclusion that venue was not a clear-cut issue. Rather, discovery was necessary in order to determine whether appellees had properly filed the lawsuit in Franklin County. Clearly, FMC did not cooperate by promptly providing this information.
 {¶ 120} Also, the information provided by FMC, to the trial court, in support of its request for $12,650 in fees reveals that the attorneys for FMC sought reimbursement for work that was not related to the venue issue. For example, the following activities are included in their fee request:
 {¶ 121} "12/03/01 Review chart and policy to determine if physician could be `intervening cause' if he had an independent responsibility to check temperature of speculum.
 {¶ 122} "02/04/02 Review Dr. Stevenson's answers to discovery.
 {¶ 123} "04/25/02 Teleconference Pat Smith regarding splitting costs of OB/GYN examination of Stephanie McManaway.
 {¶ 124} "08/01/02 Prepare and file answer to Amended Complaint with discovery requests.
 {¶ 125} "02/04/03 Review Motion for Partial Summary Judgment filed by plaintiffs.
 {¶ 126} "02/11/03 Revise memorandum contra plaintiffs' Motion for Partial Summary Judgment. See FMC's Notice of Filing Affidavit Regarding Damages, Nov. 10, 2004, at Exh. B.
 {¶ 127} Clearly, these entries have nothing to do with the venue issue. Further, other entries, in FMC's motion have portions of unrelated time entries redacted, but all of the time recorded is still presented for reimbursement. Based upon the conduct of the attorneys for FMC, we conclude the trial court did not abuse its discretion when it reduced the requested attorney fees from $12,650 to $1,000.
 {¶ 128} FMC's Sixth Assignment of Error is overruled.
 VII {¶ 129} FMC contends, in its Seventh Assignment of Error, the court erred when it excluded evidence regarding appellees' initial identification of Dr. Jones as an expert witness and subsequent withdrawal of Dr. Jones as a witness. We disagree.
 {¶ 130} We will review this assignment of error under an abuse of discretion standard of review. FMC claims it should have been permitted to comment about the referral of appellee to Dr. Jones by prior counsel in this case. Appellees correctly point out that this fact was not excluded from the jury. In fact, appellee testified, as follows, concerning her referral to Dr. Jones:
 {¶ 131} "Q. And he (Dr. Jones) is a physician that you've already said you got his name through your attorneys' office, correct?
 {¶ 132} "A. He is one of three that I was given." Tr. Vol. I at 146.
 {¶ 133} This was not the only time appellee admitted her counsel referred her to Dr. Jones. FMC told this over and over to the jury. See Id. at 190; Id. at 193; Id. at 219; Vol. III at 700; and Vol. IV at 1198. Thus, it is clear from the record the trial court did not prevent FMC from commenting on this fact.
 {¶ 134} FMC also claims appellees withdrew Dr. Jones as an expert witness after he testified, in a discovery deposition, that appellee's injuries were "superficial." The trial court did not abuse its discretion when it prohibited FMC from introducing its theory as to why appellees withdrew Dr. Jones as an expert witness. We reach this conclusion based upon a "Notice of Withdrawal of Witnesses" filed by appellees on July 27, 2004. In this notice, appellees indicate it withdrew Dr. Jones as a witness because he did not evaluate or treat appellee "* * * and so it is clear that Defendant Fairfield Medical Center, which has noticed each witness for deposition, is calling each as on direct." Notice of Withdrawal of Witnesses, July 27, 2004, at 1. To permit appellees to testify about why they withdrew Dr. Jones as an expert witness would only create confusion for the jury and would not have assisted the jury in determining damages.
 {¶ 135} FMC's Seventh Assignment of Error is overruled.
 VIII {¶ 136} FMC maintains, in its Eighth Assignment of Error, the trial court improperly prohibited Dr. Baggish from testifying why two depositions were taken of him and improperly permitted appellees' counsel to comment, during closing argument, about the number of depositions. FMC contends this comment, by appellees' attorney, created a misimpression concerning the value of the case. We disagree.
 {¶ 137} Specifically, FMC first challenges the trial court's decision not to allow FMC to question Dr. Baggish as to why two depositions were taken. In support of this argument, FMC cites to page 540 of the transcript. FMC also refers to Exhibit C attached to its appellate brief. We have reviewed this portion of Dr. Baggish's testimony that the trial court excluded. In this portion of Dr. Baggish's testimony, he explains that once an expert is identified, generally, the other side takes that expert's deposition. This testimony is irrelevant and not pertinent in determining the issue of damages
 {¶ 138} FMC next argues the trial court improperly permitted appellees' counsel to remark, during closing argument, about the hourly charges of the experts and the fact that many depositions had been taken. FMC argues this improperly created an impression about the worth of the case based upon the number of depositions. The only mention of depositions on the pages cited by FMC is as follows:
 {¶ 139} "They hired him to examine Stephanie, to write a report, go through all the medical records, and do all these depositions that you've heard for days and days and days. Give a deposition to me, come into court live, give a day off from his practice to testify. 500 bucks an hour. You do the math. He's making more money off this injury than the people who got hurt." Tr. Vol. IV at 1234.
 {¶ 140} We do not find this testimony, taken in the context within which it was presented, improperly permitted appellees' counsel to imply to the jury the worth of this case. It appears appellees' counsel made this argument in order to rebut FMC's counsel's claim that the case was only worth $10,000.
 {¶ 141} The trial court did not abuse its discretion when it excluded the testimony of Dr. Baggish and permitted appellees' counsel to rebut FMC's counsel's suggestion that the case was only worth $10,000.
 {¶ 142} FMC's Eighth Assignment of Error is overruled.
 IX {¶ 143} In its Ninth Assignment of Error, FMC contends the trial court erred by allowing improper, prejudicial and untrue closing argument by appellees' counsel. We disagree.
 {¶ 144} In closing argument, counsel is afforded great latitude. Pang v. Minch (1990), 53 Ohio St.3d 186, paragraph two of the syllabus. An appellate court reviews a claim of improper closing argument under the abuse of discretion standard. We will not reverse the trial court's decision regarding the presentation of closing argument by counsel absent an abuse of that discretion. Generally, a judgment will not be reversed on the basis of trial counsel's misconduct during arguments unless a proper and timely objection is made so that the trial court may take curative action. Goldfuss v. Davidson (1997),79 Ohio St.3d 116, 121. Where no objection is made, a trial court may sua sponte take action to nullify the prejudicial effect of statements which grossly and persistently abuse the privilege given counsel in closing argument. Clark v. Doe (1997),119 Ohio App.3d 296, 307.
 {¶ 145} In Pesek v. University Neurologists Assn., Inc.,87 Ohio St.3d 495, 2000-Ohio-483, the Ohio Supreme Court addressed the issue of improper closing argument and stressed that the trial judge has a responsibility to prohibit a gross injustice from being perpetrated by interfering to insure that the atmosphere is not surcharged with passion and prejudice. Id. at 501-502. A new trial is warranted if there is room for doubt that the verdict was rendered on the evidence or if it may have been influenced by improper remarks by trial counsel. Id. at 502.
 {¶ 146} It is based upon this standard that we review the portion of appellees' counsel's argument that FMC challenges. The pertinent portion of the closing argument, for our review, is as follows:
 {¶ 147} "Let's say you evaluated this lawsuit, seven figures, a million bucks. Stephanie and Mike would be ecstatic. Do you know why? Because that's unfair. That's too much. That's not a fair result. You shouldn't do that.
 {¶ 148} "What if you valued this case at under six figures? I'd suggest to you that the hospital executives would be dancing in the streets tonight. That's unfair. You shouldn't do that. That would be an insult to those people after what they've been through.
 {¶ 149} "The truth is, fair compensation is somewhere in between, and you're the folks that have to decide. I would submit that if you believe the plaintiffs' evidence, it ought to be in the higher range of that. If you believe the defendants' evidence, it ought to be in the lower range of that." Tr. Vol. IV at 1185.
 {¶ 150} FMC also challenges the following statements made by appellees' counsel during closing argument:
 {¶ 151} "So, we are down to the last issue, and this is the hard one, it's what's fair compensation. It is not simple in this case. I can tell you cases where it is simple, and I can make up facts and give you hypotheticals. I can tell you, Mr. Lovering's driving home today in a Jaguar, and somebody blows a stop sign and totals his car, he paid $170,000 for that, and it's now salvage value at ten, and he gets 160 grand. That's easy, isn't it?
 {¶ 152} "Someone breaks in his house and steals a Picasso worth $300,000, he turns it into the insurance company, he gets $300,000.
 {¶ 153} "His house burns down because of a defective furnace, and he sues the furnace company, and he paid 750,000 for that house, and it was ten years ago, and it's appreciated a hundred thousand, he gets $850,000.
 {¶ 154} "Those are simple.
 {¶ 155} "You know why? Because we value those things in monetary terms.
 {¶ 156} "But, you know, this lady's valuable, too. She's not a car. She's not a Picasso. She's not a house. I'll tell you what she is: She's a mother, she's a wife, and she's a daughter. And that has value in our society, too." Id. at 1233-1234.
 {¶ 157} FMC maintains the above statements made by appellees' counsel, during closing argument, were clearly made to arouse the jury's passion and prejudice. Although FMC now challenges these statements on appeal, the record reveals FMC's counsel did not object to these statements at trial. Further, FMC's counsel did not ask for a curative instruction at the conclusion of closing arguments. The absence of an objection by FMC leaves us with the alternative of applying a plain error standard of review.
 {¶ 158} Implementation of the plain error doctrine is to be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. Reichert v.Ingersoll (1985), 18 Ohio St.3d 220, 223. The plain error doctrine permits correction of judicial proceedings where error is clearly apparent on the face of the record and is prejudicial to the appellant. Id. at 223. Although the plain error doctrine is a principle applied almost exclusively in criminal cases, the Ohio Supreme court has stated that the doctrine may also be applied in civil causes, if the error complained of "`* * * would have a material adverse affect on the character and public confidence in judicial proceedings.'" Id., citing Schade v.Carnegie Body Co. (1982), 70 Ohio St.2d 207, 209; Yungwirth v.McAvoy (1972), 32 Ohio St.2d 285, 288.
 {¶ 159} We decline to find plain error in the case sub judice because this case does not rise to the level of a manifest miscarriage of justice nor does it have a material adverse affect on the character and public confidence in judicial proceedings. Rather, it appears that counsel for FMC took appellees' counsel's comments, out of context, in order to support the arguments made in this assignment of error. All of the comments challenged by FMC pertain to how the jury should determine damages in this case. The comments merely point out the fact that placing value on an object is much easier than placing value on injuries received by a person.
 {¶ 160} Further, the jury's award in this matter of $65,000 does not appear to have been rendered to punish FMC based upon the comments made by appellees' counsel. The jury's verdict is supported by evidence submitted at trial and was not based upon passion and prejudice.
 {¶ 161} FMC's Ninth Assignment of Error is overruled.
 X {¶ 162} FMC contends, in its Tenth Assignment of Error, the trial court erred when it denied its motion for directed verdict as to Appellee Michael McManaway's loss of consortium claim and at the close of the evidence. We disagree.
 {¶ 163} In addressing this assignment of error, we will apply the standard set forth in FMC's Fourth Assignment of Error. FMC first argues the trial court should have granted a motion for directed verdict regarding the loss of consortium claim because no reference was made to Appellee Michael McManaway's loss of consortium claim during opening statements. In support of this argument, FMC cites the following two cases: Wagner v.Midwestern Indem. Co., 83 Ohio St.3d 287, 1998-Ohio-111 andMitchell v. Cleveland Elec. Illuminating, Co. (1987),30 Ohio St.3d 92. We have reviewed these cases and find they do not support FMC's argument.
 {¶ 164} We note that opening statements are, as a general rule, not evidence to be considered by the jury. Enter v.Fettman, Stark App. No. 2005CA00023, 2005-Ohio-5525, at ¶ 39. Thus, counsel's failure to mention Appellee Michael McManaway's loss of consortium claim, during opening argument, does not entitle FMC to a directed verdict since opening statements are not considered evidence.
 {¶ 165} FMC next argues it was entitled to a directed verdict, at the close of evidence, because appellees' case-in-chief lacked evidence of proximate cause that Appellee Stephanie McManaway's continuing numbness below the waist, changes in sensation and inability to participate in certain recreational activities were the result of the burns she received as opposed to her MS. We have reviewed the testimony of Dr. Baggish, appellees' expert witness, and find there exists evidence of substantial probative value in support of appellees' claims. Therefore, the trial court did not err when it denied FMC's motion for directed verdict at the close of the evidence.
 {¶ 166} FMC's Tenth Assignment of Error is overruled.
 Cross-Appeal I {¶ 167} In their First Assignment of Error, on cross-appeal, appellees maintain the trial court erred when it denied prejudgment interest without allowing discovery or ruling on the motion to compel discovery. We agree.
 {¶ 168} The trial court denied appellees' request for prejudgment interest on the basis that appellees did not meet their burden of proof. Judgment Entry, Mar. 4, 2005, at 2. A trial court's decision regarding prejudgment interest will be upheld absent an abuse of discretion. Kalain v. Smith (1986),25 Ohio St.3d 157, 159. The only statutory authority to impose prejudgment interest is found in R.C. 1343.03(C). This statute provides as follows:
 {¶ 169} "(C) Interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortuous conduct and not settled by agreement of the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid, if, upon motion of any party to the action, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case."
 {¶ 170} "[T]he purpose of the above cited statute is to encourage litigants to make a good faith effort to settle their case, thereby conserving legal resources and promoting judicial economy. Peyko v. Frederick (1986), 25 Ohio St.3d 164, 167. Pursuant to R.C. 1343.03(C), appellees filed a motion for prejudgment interest and demanded discovery pursuant to this motion. When FMC failed to respond, appellees filed a motion to compel discovery regarding prejudgment interest. Appellees sought to compel FMC to respond to its requests for admission, interrogatories, requests for production, and deposition notice.
 {¶ 171} In response, FMC argued appellees' motion to compel concerned the discovery of privileged attorney-client and work product documents of a self-insured party and therefore, were not discoverable. See Defendant's Memorandum Contra Plaintiffs' Motions to Compel, Nov. 30, 2004, at 1-2. FMC stated that the discovery of such information, while a case was still pending, was inappropriate. Id.
 {¶ 172} The Ohio Supreme Court addressed the discovery issue pertaining to a motion for prejudgment interest in the Peyko
case, supra. In doing so, the Court stated:
 {¶ 173} "With regard to the appellant's assertion that the claims file is protected by the attorney-client privilege and not subject to discovery or scrutiny by the plaintiff, we simply note that `the burden of showing that testimony [or documents] sought to be excluded under the doctrine of privileged attorney-client communications rests upon the party seeking to exclude [them] * * *." Waldmann v. Waldmann (1976), 48 Ohio St.2d 176, 178
* * * (citing In re Martin [1943], 141 Ohio St. 87, 103 * * *]).Peyko at 166.
 {¶ 174} In FMC's motion contra appellees' motion to compel, FMC offered no proof that any of the documents or information appellees sought to discover were privileged, and FMC further did not request the trial court to conduct an in camera inspection of the file. FMC merely relied upon the assertion that it would be premature to disclose this information because the matter was subject to further litigation. Thus, FMC failed to satisfy its burden in establishing that the information sought by appellees contained privileged communications.
 {¶ 175} In order to address the issue of attorney-client privilege, the Court, in Peyko, held that:
 {¶ 176} "* * * [W]hen a plaintiff, having obtained a judgment against a defendant, files a motion for prejudgment interest on the amount of that judgment pursuant to R.C. 1343.03(C), the plaintiff, upon a showing of `good cause' pursuant to Civ.R. 26(B)(3), may have access through discovery to those portions of the defendant's insurer's `claims file' that are not shown by the defense to be privileged attorney-client communications. If the defense asserts the attorney-client privilege with regard to the contents of the `claims file,' the trial court shall determine byin camera inspection which portions of the file, if any, are so privileged. The plaintiff shall be granted access to the non-privileged portions of the file." (Emphasis sic.) Peyko
at 167.
 {¶ 177} In the case sub judice, appellees obtained a judgment against FMC and established "good cause" for discovery of portions of FMC's files. When FMC refused to disclose any information from its files, appellees filed a motion to compel. FMC responded that it was not required to disclose any information, from its files, due to attorney-client privilege and the fact that this matter may be subject to further litigation. Since FMC claimed attorney-client privilege, the trial court should have conducted an in-camera inspection of those portions of FMC's files that FMC claims are privileged and determined what portions of the files are privileged. Appellees are entitled to discover those portions that are not privileged.
 {¶ 178} Accordingly, we sustain appellees' First Assignment of Error on cross-appeal. We will not address appellees' Second or Third Assignments of Error because they are moot based upon our disposition of appellees' First Assignment of Error.
 {¶ 179} For the foregoing reasons, the judgment of the Court of Common Pleas, Fairfield County, Ohio, is hereby affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.
Wise, P.J. Gwin, J., and Hoffman, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Fairfield County, Ohio, is affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.
Costs assessed to FMC.